# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

STEVEN GILBERT,

   Plaintiff,

v.

WEXFORD HEALTH CARE,
AVA JOUBERT-CURTIS,
APRIL WARNICK,
BURNICE L. SWAN,
MARIA LEWIS,
DENNIS MARTIN,

   Defendants.

Civil Action No.: ELH-18-230

## MEMORANDUM OPINION

Steven Gilbert, the self-represented plaintiff, is an inmate currently incarcerated at the Western Correctional Institution ("WCI"). On January 24, 2018, Gilbert filed a § 1983 Complaint against Ava Joubert-Curtis, M.D.; April Warnick; Burnice Swan; Maria Lewis; Dennis Martin; and Wexford Health Care[1] (collectively, the "Medical Defendants"), alleging deliberate indifference to his medical needs. ECF 1. He then filed what was docketed as an Amended Complaint on February 23, 2018 (ECF 5), and what was docketed as a Second Amended Complaint on March 29, 2018. ECF 6.[2]

In this court's prior Memorandum Opinion (ECF 9) and Order (ECF 10) of August 28, 2018, I denied defendants' dispositive motion, without prejudice, as to Gilbert's claim that he was deprived of adequate medical treatment for an H. pylori infection, in violation of his Eighth

---

[1] Wexford's correct corporate name is Wexford Health Sources, Inc.

[2] Because of the similarity of this case and case ELH-17-3357, the two actions were initially consolidated. *See* ECF 8 in Case ELH-18-230; ECF 21 in Case ELH-17-3357. But, the cases are no longer consolidated. *See* ECF 28, Case ELH-17-3357.

Amendment rights. *Id.*; *see also* ECF 12; ECF 14 in Case ELH-17-3357. The Court considered materials submitted by the Medical Defendants in their response to the Court's earlier order to show cause why injunctive relief should not be granted. ECF 3 in Case ELH-17-3357. But, I concluded that the materials were not sufficient to demonstrate that Gilbert was tested for the infection, nor did the materials reveal the results of the test. *See* ECF 12; ECF 12-1, 12-2, 12-3 in ELH-17-3357; ECF 9 at 22 in ELH-18-230.

Following Gilbert's filing in ELH-18-230 of another amended complaint (ECF 11),[3] the Medical Defendants filed a motion to dismiss or for summary judgment. ECF 14; *see also* ECF 10 (order directing service); ECF 13 (notice of counsel's appearance). The motion is supported by a memorandum (ECF 14-1) (collectively, the "Motion") and exhibits. Gilbert opposes the motion (ECF 16), with exhibits, and the Medical Defendants replied. ECF 17.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Medical Defendants' Motion, construed as one for summary judgment, shall be granted.

## I. Background

In this court's prior Memorandum Opinion (ECF 9), I summarized background information concerning Gilbert's claims, as follows, ECF 9 at 3-4:[4]

> Gilbert claims that he told three nurses, April Warnick, Maria Lewis, and Dennis Martin, that he had been throwing up blood beginning October 22, 2017, without receiving medical treatment. ECF 1 at 1. He alleges that he was told his condition would be reported to a physician, but he did not receive treatment, despite that assurance. *Id.*
>
> According to Gilbert, he informed Correctional Officers Frenzel, Romey, Layton, and Davis, as well as Sgt. Drew, that he was vomiting blood for a period

---

[3] ECF 11 is plaintiff's fourth amended complaint.

[4] In ECF 9, citations to the record generally referred to case ELH-17-3357.

2

of days and had not been seen by a medical provider, despite submitting sick call slips requesting attention. ECF 1 at 2. He also claims that he filed a complaint through the prison grievance procedure, known as an ARP, stating that he has cancer, with lumps and pain in his upper chest area. *Id.* According to Gilbert, Nurse Maria Lewis told him she would try to get him seen by a provider, but he was never seen for the complaints of chest pain. *Id.* Gilbert did not explain why he believes he has cancer.

Gilbert seeks 800 million dollars in damages from Wexford "for medical neglect." ECF 1 at 3. Because of the apparent seriousness of the nature of his claimed ailment, this court directed an immediate response from DPSCS prior to service of the complaint. *See* ECF 3.

Counsel filed a response (ECF 12), together with medical records and a Declaration under oath from Burnice Swan, the Assistant Director of Nursing at WCI, where Gilbert is incarcerated. She disputes Gilbert's allegations that he has not received medical attention for his complaints. ECF 12-1 (medical records); ECF 12-2 (Declaration of Swan).

The medical records reflect that Gilbert was seen by medical staff in response to his claims that he was vomiting daily for over a month and, despite the fact that he exhibited no signs or symptoms of being dehydrated or otherwise in distress, tests were ordered, which came back normal. ECF 12-1 at 59, 58; ECF 12-2 at 2. On December 27, 2017, Dr. Joubert-Curtis reported that Gilbert complained that he had been "vomiting everything he eats or drinks for 67 days," but his demeanor when presenting to the dispensary was "smiling and laughing." ECF 12-1 at 72. In addition, Gilbert had gained weight over the previous four months. Moreover, "Labs and [abdominal] x-rays are normal." *Id.* And, a "fecal occult blood test" was also "negative." *Id.*

Dr. Joubert-Curtis observed that Gilbert has a psychiatric history, with a diagnosis of "multiple personality disorder, antisocial personality and dissociative personality disorder," for which he was under the care of psychiatric staff. ECF 9 at 4. Dr. Joubert-Curtis also noted that she was "ordering labs for h.pylori, and inflammatory markers." *Id.* But, there was no further indication regarding the results of those tests, whether other treatment was ordered as a result, or whether further treatment was required. *Id.*

Thus, at the time counsel filed the response to show cause, the results of tests ordered by Dr. Joubert-Curtis were not before this court. *Id.* As noted, in the absence of that information,

this court could not discern "whether other treatment was ordered" in light of the test results, or "whether or not further treatment is required." *Id*.

In an amended complaint following this court's Memorandum Opinion and Order (ECF 11), Gilbert alleged that he had been "sick for 122 days [with] H. pylori" and that he had been "vomiting blood, foods, liquids, and even my medications." *Id.* at 1. He stated that he had "asked to have a scope to look at [his] stomach on 2-19-18 & earlier this month," but he had not received that treatment. *Id*. Gilbert insists that "there is something seriously wrong" with his stomach that is "getting worse each day," with "sharp pains on the left side," and he worries that he may never be able to eat properly again. *Id*.

## II. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for

summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's

failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Gilbert has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, because it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties

7

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank*

*v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the

moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

## III. Discussion

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1893 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that

the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

The Eighth Amendment to the Constitution is implicated here. It prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate

11

indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).

The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer*, 511 U.S. at 837; *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A "'serious ... medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40.

In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001). As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (citation omitted). Although this "'entails more than mere negligence ... it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id*. (quoting *Farmer*, 511 U.S. at 835).

Thus, the subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). As the *Farmer* Court explained, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Therefore, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who

13

lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.; Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it ... [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences ... To lower this threshold would thrust federal courts into the daily practices of local police departments."). Therefore, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra*, 429 U.S. at 106). And, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge,

including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk . . . ." *Brice*, 58 F.3d at 105.

In *Scinto*, the Fourth Circuit said, 841 F.3d at 226:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official ... had been exposed to information concerning the risk and thus must have known about it...." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

In this case, the evidence, viewed in the light most favorable to plaintiff, establishes that he received constitutionally adequate medical care.

In their Motion, the Medical Defendants submit verified medical records indicating that in December 2017, Gilbert was tested for H. pylori and many other conditions. Of relevance here, he tested negative for H. pylori. ECF 14-3 at 3 (lab test showing "negative" result for H. pylori IGG test). By way of an Affidavit from Asresahegn Getachew, M.D. (ECF 14-4), defendants

15

explain: "H. Pylori IgG is a laboratory test that looks for antibodies in the patient that form when H. pylori is present." *Id.* at 2.

Gilbert had blood drawn for the test on December 27, 2017, and the results were received on December 29, 2017. *Id.* The test was ordered by Dr. Joubert-Curtis after Gilbert reported vomiting for 67 days. ECF 14-7 at 47. Dr. Joubert-Curtis noted that Gilbert exhibited no physical signs of being as ill as he claimed, because "he presented to the dispensary smiling and laughing, and certainly was in no distress . . . he's gained weight, since coming to WCI about a year ago . . . [h]is mucous membranes are moist. Examination of his abdomen is essentially normal. He has a negative fecal occult blood test, despite complaining that he occasionally vomits blood. Labs and abd[ominal] x-rays are all normal." *Id.*

In response, Gilbert claims that the Medical Defendants have manipulated medical records to support their claim that he does not have H. pylori; he reminds the court that he does not have unfettered access to his medical records; and he attributes his demeanor when he reported his symptoms to Dr. Joubert-Curtis to his known mental health issues. ECF 16 at 1-3. He claims that although it may have appeared that he was not in distress when complaining of his symptoms, his inappropriate laughing and smiling during his encounters with medical staff is a symptom of his schizophrenia and dissociative disorder. ECF 16 at 3. He explains that "laughing and smiling at inappropriate times" is also a means by which he reduces his personal anxiety and should not be relied upon to "minimize his serious illness." *Id.*

Gilbert purports to attach a medical record indicating that the test for H. pylori rendered a positive result which was shown to him by Nurse Dennis Marten and Nurse Michael Kleptich. *Id.* at 2; ECF 16-2 (October 31, 2017 medical record completed by Kleptich). Review of the record upon which Gilbert relies, however, reveals no mention of H. pylori.

16

Gilbert also asserts that the Medical Defendants have not provided any reports from security staff who witnessed him vomiting, nor did they include test results on collected samples of his vomit. ECF 16 at 3. He takes issue with defendants' failure to provide a copy of his entire medical file and argues that "deliberate indifference to his medical condition is proven since additional medical testing is not afforded to him." *Id*. at 5.

Even if plaintiff does not have H. pylori, he claims there have been "no active measures . . . taken to determine the cause of his vomiting without saying it was a manifestation of his mental illness." *Id*. In the alternative, according to Gilbert, if the Medical Defendants thought his symptoms were caused by his mental illness, they should have provided him with psychiatric counseling or a diagnosis to confirm their conclusion that his reports were a function of his mental health issues. *Id*. at 5. He adds that "Wexfords [sic] supervisors as Agents on scene (Dr. Ava Joubert, Dr. Getachew) took no active steps to ensure his sick calls were processed in 24 to 72 hours during a vomiting attack per their contract policy to do so." *Id*. at 6. In Gilbert's view, his reported condition should have been referred to a chronic care clinic which provides automatic monthly assessments and review by a licensed physician every 120 days. *Id*.

Gilbert's protests regarding the nature of treatment he received amount to a disagreement with the medical opinions arrived at after testing and examinations were performed by trained staff. To be sure, plaintiff reports that he was vomiting every day and could not keep anything down. But, there were no physical signs that Gilbert was so ill that he required near-constant monitoring, hospitalization, or further testing. For example, despite his reports, Gilbert gained weight during the time he said he was vomiting daily; did not appear to be dehydrated; had a normal abdominal examination; had a negative fecal blood test; and exhibited no other physical signs that would indicate he had experienced the reported symptoms. Further, despite finding no

17

physical signs that Gilbert had been so sick, x-rays were taken and labs were drawn to rule out any possible cause for his reported symptoms. Those tests confirmed the physical examinations that Gilbert had no condition that would cause him to vomit daily or to bleed internally.

The Eighth Amendment does not require medical providers to exhaust all available resources to treat symptoms that, objectively, do not present a serious medical condition. "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko*, 535 F.3d at 241). No diagnosis of a serious medical need has been made in Gilbert's case, nor have physical symptoms of a serious condition been observed.

Gilbert's assertion that he should have been provided with psychiatric care to confirm Dr. Joubert-Curtis's implication that his reported symptoms may be a part of his mental illness is a claim that was not raised in the complaint or the amended complaints. An opposition to a dispositive motion is not an appropriate vehicle for amending a pleading. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015).

In any event, the verified medical records indicate that Gilbert is receiving care for his mental health condition. *See* ECF 14-7 at 16-24 (Sept. 11, 2017 admission after suicide attempt); *id.* at 47 (Dec. 27, 2017 Provider Visit, noting personality disorders and that plaintiff "continues to see Psych."). To the extent the records do not contain more information regarding Gilbert's psychiatric care, that claim, as noted, was not raised in Gilbert's various complaints, and cannot now be considered in a belated attempt to add that claim.

## IV. Conclusion

Based on the pleadings and verified records submitted by the Medical Defendants, the Medical Defendants are entitled to summary judgment in their favor. A separate Order follows.

<u>May 15, 2019</u>　　　　　　　　　　　　　　　　　　<u>　　　　/s/　　　　　　　</u>
Date　　　　　　　　　　　　　　　　　　　　　　　Ellen L. Hollander
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge